IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WAYNE RANDALL GATREL,                          Civil No. 07-258-KI

       Petitioner,                         OPINION AND ORDER

   v.

OREGON BD. OF PAROLE AND POST-PRISON
SUPERVISION, and
GLENN SANDY

       Respondents.


   KENDRA M. MATTHEWS
   Ransom Blackman, LLP
   1001 SW Fifth Ave., Suite 1400
   Portland, OR  97204

       Attorney for Petitioner


   JOHN KROGER
   Attorney General
   SUMMER R. GLEASON
   Oregon Department of Justice
   1162 Court Street, NE
   Salem, OR  97301

       Attorneys for Respondents


   1 - OPINION AND ORDER -

KING, District Judge.

Petitioner, on post-prison supervision under the supervision of the Oregon Board of Parole and Post-Prison Supervision, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus (#49) is DENIED, and this proceeding is dismissed.

## BACKGROUND

To supplement his income, Petitioner worked the weekend, night-shift at a residential facility for youth under state supervision. He and a co-worker were indicted on numerous counts for sexual conduct following allegations by a resident and former residents of the facility. On the morning set for trial, District Attorney Huddleston ("Huddleston") informed trial counsel, in person, that during a pre-trial meeting the previous day one of the victims gave him inconsistent statements about the events at issue. Huddleston thus became a potential witness for the defense, leading to a continuance and the transfer of the case to the District Attorney from a neighboring county. Huddleston's memo to the file regarding the pre-trial meeting and the victim's inconsistent statements was not disclosed to defense counsel.

Following a trial by jury at which the victim's testified, Petitioner was convicted of four counts of Using a Child in the Display of Sexually Explicit Conduct, two counts of Contributing to the Sexual Delinquency of a Minor, four counts of Sexual Abuse in

2 - OPINION AND ORDER -

the Third Degree, and one count of Racketeering. He was sentenced to 70 months imprisonment, and thirty-six months post-prison supervision.

Petitioner filed a Motion for New Trial raising, *inter alia*, that preliminary jury instructions "omitted any language relating to [his] being innocent until proven guilty or the prosecution's burden to prove its case beyond a reasonable doubt." (Respt.'s Ex. 133 at 2.) Following oral argument, the motion was denied. (Respt.'s Ex. 110 at 812.)

Petitioner appealed his conviction, but the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. (Respt.'s Exs. 115 & 116, Attach. 16.) Petitioner filed for post-conviction relief ("PCR") alleging ineffective assistance of counsel and violation of his right to due process, but the PCR trial court denied relief. (Respt.'s Ex. 151.) Petitioner appealed, but the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. (Respt.'s Exs. 156 & 155.)

In his Amended Petitioner for Writ of Habeas Corpus (#49), Petitioner presents two grounds for relief: (1) Petitioner was denied the effective assistance of trial counsel because counsel "failed to request or argue for or except to the trial court's failure to issue jury instructions as to the state's burden of proof and the presumption of innocence in the preliminary jury

3 - OPINION AND ORDER -

instructions[;]" and (2) Petitioner was denied due process when the state "failed to share a memorandum documenting the exculpatory statements made by one of the alleged victims to District Attorney Huddleston."  (Amended Pet. at 8-9.)

## DISCUSSION

I.  Standards of Review

An application for a writ of habeas corpus shall not be granted unless the adjudication on the merits in State court was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In *Williams v. Taylor*, 529 U.S. 362, 386-389 (2000), the Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review.

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) *cert. denied*, 126 S. Ct. 484 (2005). A state court decision is "contrary to" clearly established Federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent.  *Williams,* 529 U.S. at 388.

4 - OPINION AND ORDER -

An "unreasonable application" of clearly established federal law occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lambert*, 393 F.3d at 974 (citing *Williams*). "The state court's application of . . . law must be *objectively unreasonable*." *Williams*, 529 U.S. at 411 (emphasis added). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly." *Id*.

The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002). When a state court does not supply the reasoning for its decision, a federal court does an independent review of the record to determine whether the state court decision was objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 982 (9th Cir. 2000). The review does not, however, change the rule of decision. *Greene v. Lambert*, 288 F.3d 1081, 1089 (9th Cir. 2001). The federal court's review focuses on whether the state court's resolution of the case was an unreasonable application of clearly established federal law. *Id.* If the federal court does not find that the state court decision was objectively unreasonable, deference is given to the state court decision and habeas relief is

5 - OPINION AND ORDER -

denied. *Delgado*, 223 F.3d at 981-82; *see also Williams*, 529 U.S. at 386-89. While the PCR court's General Judgment denying relief does not provide reasoning on the claims at issue here, the transcript of the PCR court trial proceeding provides the PCR court's reasoning and, accordingly, informs this Court's review.

II. Ground for Relief One

Petitioner alleges he was denied the effective assistance of trial counsel because counsel "failed to request or argue for or except to the trial court's failure to issue jury instructions as to the state's burden of proof and the presumption of innocence in the preliminary jury instructions." He contends the PCR court's rejection of this claim was clearly erroneous. (#41, Mem. at 13.) I disagree.

For habeas relief to be granted, Petitioner must show this Court that the state PCR court adjudication of his ineffective assistance of counsel claim was contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must prove 1) that counsel's performance fell below an objective standard of reasonableness and, 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 687-88. "A reasonable probability is a probability sufficient to undermine confidence in

the outcome." *Strickland* at 694. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The reasonableness of counsel's conduct must be evaluated in light of the facts of the case and the circumstances at the time of representation. *Id*. at 690.

The record before the PCR court included, in relevant part, the trial transcript - including the hearing on Petitioner's Motion for New Trial, trial counsel's PCR affidavit and deposition, and Petitioner's PCR deposition. (Respt.'s Ex. 150 Index B.) In his affidavit, trial counsel noted his preference that jury instructions on the burden of proof and presumption of innocence be given before closing argument for tactical reasons and impact. (Respt.'s Ex. 149 at 3.) In his deposition, trial counsel reported not asking for preliminary instructions on the burden of proof because "I voir dire on that, pretty extensive voir dire on that." (Respt.'s Ex. 148 at 65-66.) In his opening statement at trial, counsel reminded jurors the defense did not carry the burden of proof. (Respt.'s Ex. 105 at 97.) In the hearing on the Motion for New Trial, the trial court noted: "the instructions at the beginning of the case prior to voir dire . . . contains the definition of beyond a reasonable doubt. The standard jury

7 - OPINION AND ORDER -

instruction after the jury's selected does not contain that[;]" "[i]n closing arguments I did instruct as to the burden of proof." (Respt.'s Ex. 110 at 808.)

The PCR trial court summarized its understanding of the facts as follows: "[T]he jury was instructed in voir dire on burden of proof and presumption of innocence in voir dire. Then at the end of the . . . evidence before argument, the court instructed again on this." (Respt.'s Ex. 150 at 99.) Petitioner argued the trial court did not include the burden of proof and presumption of innocence in the preliminary instructions to the jury. (*Id*. at 102.) The State argued trial counsel had discussed both legal standards extensively during voir dire, trial counsel's preference was that instructions be given at the end of the evidence, there was no case law presented to show trial counsel's approach constituted ineffective assistance of counsel, and Petitioner had not provided the voir dire transcript to show trial counsel had not discussed the legal standards during voir dire as he claimed. (*Id*.) At the conclusion of these oral arguments, the PCR trial court concluded it would not be ruling in Petitioner's favor. (*Id*. at 103.)

A claim of ineffective assistance of counsel is defeated if the petitioner fails to prove either deficient performance or prejudice. *Strickland*, 466 U.S. at 700. An independent review of the record leads to the conclusion Petitioner failed to show the

8 - OPINION AND ORDER -

PCR court that trial counsel's representation fell below objective standards of reasonableness. Accordingly, it was neither contrary to, nor an unreasonable application of *Strickland* for the PCR court to deny relief and habeas relief is precluded.

III. Ground for Relief Two

Petitioner alleges his due process rights were violated when the state "failed to share a memorandum documenting the exculpatory statements made by one of the alleged victims to District Attorney Huddleston." (Amended Pet. at 8-9.) It is undisputed that Huddleston had a pre-trial meeting with four of the victims on September 5, 2001, and the next morning informed trial counsel, in person, that a victim had made inconsistent statements the day before. (Respt.'s Ex. 146 at 6 & 18.) Petitioner contends the prosecution's failure to disclose Huddleston's September 6, 2001, memo to the file regarding the previous day's pre-trial meeting with the victims violated his right to due process. Respondent argues the content of the memo was known to counsel as a result of Huddleston's verbal disclosure. (#50 at 5; #29 at 18-19.)

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment . . . ." Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceeding would have been

9 - OPINION AND ORDER -

different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). A Petitioner must show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)(quoting *Kyles*, 514 U.S. at 435.)

Huddleston's September 6, 2001 Memo to file reads as follows:

> On September 5, 2001, in preparation for trial in the case of State v. Wayne Gatrel, I met with a number of the alleged victims. In discussing the incident that allegedly happened in the counselor's office, I met with Megan Hislip, Joshua Hetman, Laura Stolzer, and John Lewis as a group. During that meeting, Megan told me that she did not have sexual intercourse or oral sex with Joshua in the counselor's office. Joshua was less clear on the matter, but did not insist that sexual intercourse or oral sex took place between he and Megan.
>
> After we finished our joint discussion, I walked Laura and John out to where their folks were waiting. Joshua had stayed behind to clean up some water that he had spilled on the table. When I returned to the conference room, Megan told me that in fact she had engaged in oral and vaginal sex with Joshua during the incident in the office. Joshua confirmed that was true. When I asked why she hadn't told me this before, Megan explained that she had been embarrassed to talk about it in front of the others, particularly John.
>
> Megan also told me that Gatrel had not actually had sexual intercourse with her, but that his penis had gone in her vagina partially on one occasion.

(Respt.'s Ex. 126.) In his deposition, Huddleston stated he believed he wrote the memo after he had spoken with trial counsel at the courthouse regarding the inconsistent statements, and that he had told counsel everything included in the memo. (Respt.'s Ex. 146 at 8 & 18-19.) Trial counsel stated in his deposition that he

10 - OPINION AND ORDER -

had a series of conversations with Huddleston and was told some of the witnesses had significantly changed their stories, but that he was not told specifically what the inconsistencies were. (Respt.'s Ex. 148 at 20-21; 20-23; 69-70.) When asked why he had not called Huddleston as a witness for the defense, trial counsel explained "the witnesses admitted to the inconsistencies on the witness stand. And calling Mr. Huddleston to simply corroborate that fact would have been very dangerous." (*Id*. at 24-25.)

Petitioner argues the failure to disclose Huddleston's memo prevented trial counsel from knowing "the full scope of Megan Hislip's recantation" and affected his ability to cross-examine the witnesses. (#41 at 19-20.) However, while the memo provides evidence of Megan's recantation, it also provides evidence that very shortly after her recantation she admitted to having had sex with Joshua and gave her reasons for denying it earlier, and that Joshua confirmed they had sex. Moreover, at trial, under both direct and cross-examination, Megan testified about changing her story when speaking with Huddleston and her reasons for doing so. (Respt.'s Ex. 105 at 306-308.) And the other victims also testified under cross-examination about inconsistencies in their stories. (*Id*. at 142 & 217-222; Ex. 106 at 388-89.)

While it is undisputed that Huddleston's September 6, 2001, memo was not disclosed and should have been, on review of the record, I find Petitioner has not shown that there is a reasonable

11 - OPINION AND ORDER -

probability that, with disclosure of Huddleston's memo, the results of the trial would have been different. Accordingly, the PCR court rejection of this claim was neither contrary to, nor an unreasonable application of established federal law and habeas relief is precluded.

## **CONCLUSION**

Based on the foregoing, the Amended Petition for Writ of Habeas Corpus (#49) is DENIED, and this proceeding dismissed with prejudice.

IT IS SO ORDERED.

DATED this   13th   day of October, 2009.

>        /s/ Garr M. King
>           Garr M. King
>           United States District Judge

12 - OPINION AND ORDER -